No. 22-5155

---

## In the United States Court of Appeals
## for the District of Columbia Circuit

---

**LASSANA MAGASSA**,
*Plaintiff-Appellant,*

*v.*

**TRANSPORTATION SECURITY ADMINISTRATION**,
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the District of Columbia
(Sullivan, E.), Civ. Action No. 19-01953 (EGS)

---

## FINAL OPENING BRIEF OF APPELLANT

---

Christina A. Jump
Samira Elhosary
Constitutional Law Center for
Muslims in America
100 N. Central Expy., Suite 1010
Richardson, Texas 75080
cjump@clcma.org
selhosary@clcma.org
(972) 914-2507

June 27, 2023                          *Attorneys for Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), Appellant certifies as follows:

## A. Parties and Amici

Dr. Lassana Magassa ("Dr. Magassa" or "Appellant") was the Plaintiff before the district court and now appears as the Appellant before this Court.

The Transportation Security Administration ("TSA" or "Appellee") was the Defendant before the district court and appears now as the Appellee before this Court.

## B. Rulings Under Review

Dr. Magassa appeals the Order and Opinion of Judge Emmet Sullivan of the United States District Court for the District of Columbia in cause number 19-01953. JA-122 – JA-154. The Opinion, dated March 31, 2022, granted Appellee's Motion for Summary Judgment. Appellant filed a copy of the Order on June 29, 2022, with his initial filings per this Court's May 5, 2022 order. *See* Document #1952701. No official citation for the Order exists, but this Court can find the Opinion at *Magassa v. Transp. Sec. Admin.*, No. 19-01953 (EGS), 2022 U.S. Dist. LEXIS 60940 (D.D.C. Mar. 31, 2022).

## C. Related Cases

There are no related cases in this Court or any other court.

Dated:  June 27, 2023

Respectfully submitted,

*/s/ Christina A. Jump*
Christina A. Jump
D.C. Cir. Bar No. 62175
cjump@clcma.org
Samira Elhosary
D.C. Cir. Bar No. 63673
selhosary@clcma.org
100 N. Central Expy, Ste. 1010
Richardson, TX 75080
(972) 914-2507
*Attorneys for the Appellant*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

   A.   Parties and Amici ............................................................... i

   B.   Rulings Under Review ....................................................... i

   C.   Related Cases .................................................................... i

TABLE OF CONTENTS ............................................................... iii

GLOSSARY OF ABBREVIATIONS ............................................... v

TABLE OF AUTHORITIES ........................................................... vi

JURISDICTIONAL STATEMENT ................................................. 1

STATEMENT OF ISSUES ........................................................... 2

PERTINENT STATUTORY PROVISIONS ..................................... 3

PERTINENT REGULATIONS ...................................................... 6

STATEMENT OF THE CASE ....................................................... 7

   1.   Nature of the Case and Procedural History .......................... 7

   2.   Dr. Magassa's Allegations ................................................ 8

SUMMARY OF THE ARGUMENT ............................................... 11

ARGUMENT .............................................................................. 15

   **I.**   **Standard of Review** ..................................................... 15

   **II.**   **The TSA Unreasonably Narrowed Its Searches** ............. 15

   A.   The TSA failed to construe Dr. Magassa's request liberally ... 16

   B.   The TSA erred in failing to task other program offices with searches .... 19

   C.   The district court erred in determining that the TSA properly narrowed the request ................................................................. 20

   **III.**   **The District Court Erred In Determining The TSA Justifiably Withheld Records Under Exemption 3** ............... 22

   A.   Courts may review whether records constitute the types covered by the relevant statute ...................................................... 23

   B.   The TSA fails to sufficiently describe the withheld records ... 25

   C.   The TSA wrongly issued its *Glomar* response ...................... 28

   **IV.**   **The TSA Improperly Withheld Records Under The Guise of Exemption 6** ....................................................... 30

  A. Neither the Miller Declaration nor the *Vaughn* index suffices ................31

  B. The district court ignored the strong public interest .................................34

**V. The District Court Erred In Determining The TSA Met Its Segregability Obligation** ....................................................................35

  A. The *Vaughn* index and the Miller and Blair Declarations lack sufficient detail ................................................................................................37

  B. The TSA fails to provide a sufficient segregability analysis .................39

**VI. In the Alternative, Appellant Requests This Court Order Review of The Withheld Records *In Camera*** ................................................40

CONCLUSION ...............................................................................................41

CERTIFICATE OF COMPLIANCE ....................................................................43

CERTIFICATE OF SERVICE ..........................................................................44

# GLOSSARY OF ABBREVIATIONS

CBP                    Customs & Border Protection

DHS TRIP               Department of Homeland Security Traveler Redress Inquiry Program

FOIA                   Freedom of Information Act

I&A                    TSA Intelligence & Analysis Branch

SSI                    Sensitive Security Information

TSA                    Transportation Security Administration

TSRB                   TSA Transportation Security Redress Branch

## TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Dep't of the Air Force v. Rose*
425 U.S. 352 (1976) ........................................... 32

*U.S. Dep't of Def. v. FLRA*
510 U.S. 487 (1994) ........................................... 35

*U.S. Dep't of State v. Wash. Post Co.*
456 U.S. 595 (1982) ........................................... 32

**Federal Court Opinions**

*Aguiar v. DEA*
865 F.3d 730 (D.C. Cir. 2017) ........................... 22

*Am. Oversight v. U.S. Postal Serv.*
2021 U.S. Dist. LEXIS 182014 (D.D.C. Sept. 23, 2021) ........................... 33, 35

*Church of Scientology, Inc. v. Turner*
662 F.2d 784 (D.C. Cir. 1980) ....................... 24, 26, 39

*Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ*
746 F.3d 1082 (D.C. Cir. 2014) ........................ 40

*CLEAR v. U.S. Customs & Border Prot.*
2022 U.S. Dist. LEXIS 199846 (E.D.N.Y. Nov. 2, 2022) ........ 26, 28, 32, 37, 39

*Core v. U.S. Postal Serv.*
730 F.2d 946 (4th Cir. 1984) ............................ 33

*Darnbrough v. U.S. Dep't of State*
924 F. Supp. 2d 213 (D.D.C. 2013) ................... 30

*Debrew v. Atwood*
792 F.3d 118 (D.C. Cir. 2015) ........................... 22

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*
928 F. Supp. 2d 139 (D.D.C. 2013) ................... 38

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ........................... 15

*Inst. for Just. v. IRS*
    941 F.3d 567 (D.C. Cir. 2019) ................................................... 16, 22

*Jurewicz v. USDA*
    741 F.3d 1326 (D.C. Cir. 2014) ....................................................... 34

*Kimberlin v. DOJ*
    139 F.3d 944 (D.C. Cir. 1998) ......................................................... 40

*King v. U.S. Dep't of Just.*
    830 F.2d 210 (D.C. Cir. 1987) .................................................... 26, 27

*Kleinert v. BLM*
    132 F. Supp. 3d 79 (D.D.C. 2015) ................................................... 33

*Krikorian v. Dep't of State*
    984 F.2d 461 (D.C. Cir. 1993) ......................................................... 22

*Labow v. U.S. DOJ*
    831 F.3d 523 (D.C. Cir. 2016) .................................................... 15, 23

*Nation Mag. v. U.S. Customs Serv.*
    71 F.3d 885 (D.C. Cir. 1995) ........................................................... 16

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*
    879 F.2d 873 (D.C. Cir. 1989) ......................................................... 32

*Nat'l W. Life Ins. Co. v. United States*
    512 F. Supp. 454 (N.D. Tex. 1980) .................................................. 33

*Oglesby v. U.S. Dep't of Army*
    920 F.2d 57 (D.C. Cir. 1990) ........................................................... 16

*People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*
    745 F.3d 535 (D.C. Cir. 2014) ......................................................... 29

*Phillippi v. CIA*
    546 F.2d 1009 (D.C. Cir. 1976) ......................................................... 7

*Prison Legal News v. Samuels*
    787 F.3d 1142 (D.C. Cir. 2015) ........................................... 27, 28, 31

*Quinon v. FBI*
    86 F.3d 1222 (D.C. Cir. 1996) ......................................................... 41

*Reed v. NLRB*
    927 F.2d 1249 (D.C. Cir. 1991) ........................................................ 32

*Reporters Comm. for Freedom of the Press v. FBI*
    877 F.3d 399 (D.C. Cir. 2017) ......................................................... 19

*Roth v. U.S. DOJ*
    642 F.3d 1161 (D.C. Cir. 2011) ....................................................... 36

*SAI v. Transp. Sec. Admin.*
    315 F. Supp. 3d 218 (D.D.C. 2018) ................................................. 33

*Schiller v. NLRB*
    964 F.2d 1205 (D.C. Cir. 1992) ....................................................... 19

*Shapiro v. U.S. DOJ*
    507 F. Supp. 3d 283 (D.D.C. 2020) ................................................. 24

*Summers v. DOJ*
    140 F.3d 1077 (D.C. Cir. 1998) ....................................................... 27

*Sussman v. U.S. Marshals Serv.*
    494 F.3d 1106 (D.C. Cir. 2007) ................................................. 37, 40

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*
    177 F.3d 1022 (D.C. Cir. 1999) ....................................................... 40

*Truitt v. Dep't of State*
    897 F.2d 540 (D.C. Cir. 1990) ......................................................... 16

*Valencia-Lucena v. United States Coast Guard, FOIA/PA Records Mgmt.*
    180 F.3d 321 (D.C. Cir. 1999) .................................................... 15-16

*Vaughn v. Rosen*
    484 F.2d 820 (D.C. Cir. 1973) ................................................... 36, 38

*Vaughn v. United States*
    936 F.2d 862 (6th Cir. 1991) ........................................................... 28

*Wilderness Soc'y v. U.S. DOI*
    344 F. Supp. 2d 1 (D.D.C. 2004) .................................................... 36

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ................................................... 23, 26

## United States Code

5 U.S.C. § 114 ................................................................................ 23, 26

5 U.S.C. § 552 ........................................................................ 1, 3, 4, 17, 41

5 U.S.C. § 552b .......................................................................... 3, 22, 30

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1294 ............................................................................. 1

49 U.S.C. § 114(r) ............................................ 4, 5, 9, 12, 22, 23, 25, 26, 27, 30

49 U.S.C. § 46110 .......................................................................... 24

## Rules

D.C. Cir. R. 27(a)(4) ........................................................................ i

D.C. Cir. R. 28(a)(1)(A).....................................................................i

Fed. R. App. P. 26.1 ........................................................................ i

Fed. R. App. P. 32 .......................................................................... 1

Fed. R. Civ. P. 56 ......................................................................... 15

## Regulations

49 C.F.R. pt. 1520 .......................................................................... 6

49 C.F.R. pt. 1520.1 ........................................................................ 6

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) because Dr. Magassa brings his claims under the Freedom of Information Act ("FOIA"). This appeal is from a final judgment that disposes of all parties' claims. This Court has appellate jurisdiction under 28 U.S.C. §§ 1291, 1294.

On March 31, 2022, the district court granted Appellee's Motion for Summary Judgment (Dkt No. 9) and denied Dr. Magassa's Motion for Summary Judgment (Dkt No. 11), entering judgment in favor of the TSA.

Dr. Magassa filed a timely notice of appeal on May 27, 2022 (Dkt No. 25), seeking review of the March 31, 2022 order.

## STATEMENT OF ISSUES

1. Whether the district court erred in granting judgment as a matter of law in favor of Appellee when it found the TSA's search for records adequate, contrary to the agency's duty to construe FOIA requests liberally;

2. Whether the district court erred in granting judgment as a matter of law in favor of Appellee when it ruled the TSA properly withheld responsive materials under Exemption 3 of FOIA, despite the TSA failing to provide sufficient detail about the content of the withheld records;

3. Whether the district court erred in granting judgment as a matter of law in favor of Appellee when it ruled the TSA properly withheld responsive materials under Exemption 6 of FOIA, despite the TSA's failure to demonstrate that disclosure of those records would constitute a clearly unwarranted invasion of privacy;

4. Whether the district court erred in granting judgment as a matter of law in favor of Appellee when it ruled the TSA sufficiently demonstrated it released all segregable nonexempt records, despite failing to describe whether otherwise exempt records contain any nonexempt information or if any nonexempt information could be segregated from exempt information.

2

## PERTINENT STATUTORY PROVISIONS

- 5 U.S.C. § 552 (Freedom of Information Act or "FOIA") provides in relevant part:

> Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3)(A).

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

5 U.S.C. § 552(a)(4)(B).

> (b) This section does not apply to matters that are—

> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--

> > (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

> > > (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

> > (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

5 U.S.C. §§ 552(b)(3), (6).

(8)(A) An agency shall –

(i) withhold information under this section only if –

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii)(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information; and

(B) Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3).

5 U.S.C. § 552(a)(8).

- 49 U.S.C. § 114(r) provides in relevant part:

IN GENERAL.—Notwithstanding section 552 of title 5, the Administrator shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107–71) or under chapter 449 of this title if the Administrator decides that disclosing the information would—

(A) be an unwarranted invasion of personal privacy;

(B) reveal a trade secret or privileged or confidential commercial or financial information; or

4

**(C)** be detrimental to the security of transportation.

49 U.S.C. § 114(r)(1).

# PERTINENT REGULATIONS

- 49 C.F.R. pt. 1520 provides in relevant part:

    (a) *Applicability.* This part governs the maintenance, safeguarding, and disclosure of records and information that TSA has determined to be Sensitive Security Information, as defined in § 1520.5. This part does not apply to the maintenance, safeguarding, or disclosure of classified national security information, as defined by Executive Order 12968, or to other sensitive unclassified information that is not SSI, but that nonetheless may be exempt from public disclosure under the Freedom of Information Act. In addition, in the case of information that has been designated as critical infrastructure information under section 214 of the Homeland Security Act, the receipt, maintenance, or disclosure of such information by a Federal agency or employee is governed by section 214 and any implementing regulations, not by this part.

    (b) *Delegation.* The authority of TSA and the Coast Guard under this part may be further delegated within TSA and the Coast Guard, respectively.

  49 C.F.R. pt. 1520.1.


  (9) *Security screening information.* The following information regarding security screening under aviation or maritime transportation security requirements of Federal law:

  (i) Any procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons, accessible property, checked baggage, U.S. mail, stores, and cargo, that is conducted by the Federal government or any other authorized person.

  (ii) Information and sources of information used by a passenger or property screening program or system, including an automated screening system.

  49 C.F.R. pt. 1520 (b).

## STATEMENT OF THE CASE

### 1.  Nature of the Case and Procedural History

This matter results from Dr. Magassa's Freedom of Information Act ("FOIA") request submitted to the TSA on September 18, 2017, and acknowledged as perfected on October 18, 2017. JA-37 – JA-39, JA-49 – JA-51. The TSA responded on May 18, 2018 with production of forty-nine pages of records, twenty-three of which it withheld in part, and identified another 182 pages withheld in full. The TSA withheld pages under FOIA Exemptions 3 (protecting records withheld under other statutes) and 6 (protecting information the disclosure of which would be a clearly unwarranted invasion of privacy). JA-55 – JA-60. It also issued a *Glomar* response,[1] refusing to confirm or deny the existence of records addressing whether Dr. Magassa is or ever has been on a watchlist.

Dr. Magassa timely appealed this determination on July 6, 2018, through the TSA's FOIA administrative process. JA-63 – JA-66. On September 5, 2018, the TSA upheld its own decision on withholding. JA-67 – JA-70. Dr. Magassa challenged the TSA's final administrative response by filing suit in the U.S. District Court for the District of Columbia. This action challenges the adequacy of the TSA's search for

---

[1] The term "*Glomar* response" refers to an agency's refusal to confirm or deny the existence of records when acknowledging the existence of the records would reveal information protected by a FOIA Exemption. The term derives from a case in which a reporter sought records from the CIA about the *Hughes Glomar Explorer*, a research vessel. *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

responsive records, the appropriateness of Exemptions 3 and 6, and whether the TSA met its obligation to release all reasonably segregable nonexempt records.

Upon consideration of cross-motions for summary judgment, the district court granted summary judgment for the TSA and determined the TSA met its statutory obligations to produce records. *See generally* JA-122 – JA-154. The present appeal challenges that determination, and seeks reversal with an order for the TSA to either produce further responsive records or appropriately justify its withholdings as required by FOIA.

### 2. Dr. Magassa's Allegations

Dr. Magassa alleges the TSA violated FOIA by failing to produce records responsive to his request, or to sufficiently justify its withholdings. JA-14. Dr. Magassa also challenges the adequacy of the TSA's search for responsive records. Agencies must complete searches that could be reasonably expected to uncover all responsive records. Dr. Magassa alleges the TSA impermissibly narrowed the scope of his request, thereby failing to search for all records responsive to his submitted request.

The TSA withheld records in full or in part in reliance on pursuant to two Exemptions to FOIA. Exemption 3 authorizes agencies to withhold material specifically exempted from disclosure under another statute. In this case, the TSA relies on 49 U.S.C. § 114(r) ("Section 114(r)"), which authorizes the TSA

8

Administrator to withhold records designated as Sensitive Security Information ("SSI"). JA-31. Dr. Magassa challenges the TSA's failure to describe the withheld material in sufficient detail to permit the district court to determine whether the material falls under Section 114(r). JA-15.

Dr. Magassa challenges the TSA's issuance of a *Glomar* response, in which it refused to confirm or deny the existence of records that may indicate whether individuals are on watchlists. JA-32. To support assertions like this, agencies must provide reasonably specific agency affidavits explaining why confirmation of the existence of the relevant records creates harm cognizable under FOIA. Across-the-board responses are inappropriate, as when agencies contend specific records systems are unsearchable because they contain information that may be exempt. The TSA did not justify its refusal to search for nonexempt records about Dr. Magassa, and therefore cannot properly rely on a *Glomar* response.

Exemption 6 authorizes withholding of records if their disclosure constitutes an unwarranted invasion of privacy. The TSA relies on this Exemption to withhold the names of the TSA and Customs and Border Protection ("CBP") agents which appear in the relevant records. JA-33. The district court saw no public interest in releasing these names which outweighed the agents' privacy interests. JA-150. Dr. Magassa challenges this determination because the release of merely the names of public employees, without more, cannot sufficiently identify the agents in any way

9

causing the harms the TSA asserts will result. Dr. Magassa further challenges the district court's conclusion that no sufficient public interest in the information exists. In addition, Dr. Magassa is interested in learning the names of potential wrongdoers for his ongoing parallel litigation, just as the public has a right to know which federal employees commit wrongs.

Dr. Magassa challenges the district court's determination the TSA met its obligations under FOIA to release all reasonably segregable nonexempt information contained in otherwise exempt records. JA-150. The TSA's declarations fail to describe in sufficient detail whether the 182 pages withheld in full contain any nonexempt information, or how that information may intertwine with exempt information in a way that justifies the withholding.

In the alternative, Dr. Magassa seeks remand with an order from this Court that instructs the district court to conduct *in camera* review, to gain more complete answers to the above questions.[2]

---

[2] *See infra* Part VI. The TSA offered to provide the district court with further information (though not the responsive records themselves) on an *ex parte, in camera* basis, but the district court declined the invitation.

## SUMMARY OF THE ARGUMENT

Dr. Magassa respectfully requests this Court reverse the district court's grant of summary judgment to the TSA in its *de novo* review. As a matter of law, the TSA failed to demonstrate that it either produced all responsive records, or properly withheld only the records protected by an applicable FOIA Exemption. Though courts often resolve FOIA cases on summary judgment, agencies must still provide sufficiently detailed declarations and *Vaughn* indexes describing the records withheld. The TSA failed to meet these burdens, relying instead on vague and conclusory descriptions of the withheld records, with little to no explanation of the searches conducted or reasons the claimed Exemptions apply.

FOIA allows citizens insight into the inner workings of the government. The motivating principle of the Act therefore centers on disclosure, not secrecy. To accomplish this purpose, FOIA requires federal agencies to describe in reasonable detail any material they seek to withhold and how that material fits one of FOIA's stated Exemptions. Dr. Magassa complied with the statute's requirements and the TSA's regulations in formulating his request, as the TSA agreed when it deemed Dr. Magassa's request perfected. However, the TSA did not uphold its obligations under the statute. The TSA failed to conduct or even articulate an adequate search, inappropriately withheld responsive documents under the guise of Exemptions 3 and 6, and failed to complete a sufficient segregability analysis.

11

The district court erred in concluding the TSA conducted an adequate search for records in response to Dr. Magassa's request, ignoring the fact that the TSA unreasonably narrowed the scope it searched. Adequate searches are reasonably designed to uncover all documents responsive to the request. Dr. Magassa's request on October 13 identified five subcategories of records sought. JA-43 – JA-45. Upon the TSA's request, Dr. Magassa provided a list of specific airports and dates where TSA agents stopped him, but reiterated his continued interest in records responsive to his full October 13 request. JA-46 – JA-51. The TSA unreasonably construed the list it requested as narrowing the required scope of the entire search. Further, the declarations provided by the TSA contain insufficient detail about the parameters of the searches conducted, what records agents uncovered, and if or why any broader searches might prove unduly burdensome.

The TSA withheld 182 pages of responsive records in full, under the cover of Exemption 3 and 49 U.S.C. § 114(r). JA-73. Section 114(r) authorizes the TSA Administrator to regulate the designation and release of records containing SSI. Courts reviewing Exemption 3 withholdings determine whether the records, as described by the agencies, are in fact the types covered by the relevant statute. Despite an absence of information from the TSA about the contents of the 182 pages, the district court readily agreed they all contained unsegregable SSI and therefore were properly withheld. FOIA requesters necessarily suffer an information

disadvantage in litigation, because they cannot know the actual contents of the withheld records. Requesters and courts must rely on agencies to provide sufficient detail supporting their withholdings of responsive material. The TSA did not meet this standard, only offering vague and conclusory descriptions.

FOIA's Exemptions also protect the disclosure of information that could lead to a "clearly unwarranted invasion of privacy" if disclosed. Exemption 6 protects records containing this type of information from disclosure. Yet that protection has limits: courts apply a balancing test to weigh the privacy rights implicated by the identifying information against public interest in the information. Here, the TSA relied on Exemption 6 to withhold the agents' names in the responsive records. JA-33. The TSA fails to justify how the release of just the agents' names could wrongfully identify these public employees, without the release of other identifying factors such as birthdates or social security numbers. Despite the limited privacy risk implicated by releasing the names of agents, the TSA claims the redactions are necessary to protect federal employees from harassment because of the nature of their jobs. *Id*. The district court agreed with this unsubstantiated concern and saw no countervailing public interest in the information. But the public does have interest in knowing how the TSA operates its redress procedures, to the fullest extent possible. An even more substantial public interest exists in knowing that federal government employees do their jobs without prejudice or malice. Releasing only the

agents' names serves the public's interest in accountability of government employees, without creating a clearly unwarranted invasion of privacy. The TSA inappropriately asserted Exemption 6 to withhold the names of the federal agents.

Finally, the district court erroneously concluded the TSA met its obligation to release any reasonably segregable nonexempt information from otherwise exempt records. JA-150. The district court reached its conclusion with no information about how much nonexempt material exists or how it may intertwine with other records. Like the explanations required to support withholding information, courts require agencies to provide detailed descriptions explaining the degree of segregability of nonexempt records. While courts do review contested records when needed, shifting that duty to courts without any preceding explanation by the responding agencies imposes a drain on judicial resources. The skeletal *Vaughn* index provided by the TSA in this litigation fails to meet the TSA's burden. Agencies need not release nonexempt information when inextricably intertwined with exempt information to the degree that its production risks revealing the protected exempt information. But the TSA never makes that claim here. Instead, the TSA's declarations merely offer broad and conclusory assertions that "nonexempt responsive records … have been segregated" to support its segregability claim.  These do not hold up to the stringent requirements of the federal courts. JA-35; *see also* JA-73.

14

## ARGUMENT

### I.    Standard of Review

This Court reviews district courts' findings in FOIA matters *de novo*. *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020). Summary judgment is appropriate only where a moving party demonstrates "no genuine dispute [exists] as to any material fact." Fed. R. Civ. P. 56(a). In this case, the district court agreed with the TSA that it established beyond any factual dispute that it either produced all responsive records, or withheld records according to an applicable FOIA Exemption. JA-137. Even on summary judgment motions filed by FOIA requesters, agencies still bear the burden to provide affidavits explaining with reasonably specific detail the searches they conducted and the applicability of the Exemptions asserted. *Labow v. U.S. DOJ*, 831 F.3d 523, 527 (D.C. Cir. 2016). Agencies must provide more than mere conclusory self-serving statements to justify summary judgment.

### II.    The TSA Unreasonably Narrowed Its Searches

Agencies may demonstrate they fulfilled their obligations to requesters if they "demonstrate beyond material doubt" that they ran searches "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. United States Coast Guard, FOIA/PA Records Mgmt.*, 180 F.3d 321, 325 (D.C. Cir. 1999) (explaining that agencies may not limit their search locations if sources at other locations likely

15

contain responsive records). To meet these requirements, agencies may submit detailed affidavits that set forth the search terms used and the types of searches performed. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (characterizing as insufficient search descriptions that did not contain the search terms or how agents conducted the search, and did not affirm the search was reasonably calculated to uncover all relevant documents). Courts judge the adequacy of searches by their parameters rather than how many records result. Summary judgment is improper when "substantial doubt" remains about whether agencies completed sufficient searches. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (defining an adequate search as one that meets the objective standard of reasonableness).

## A.    The TSA failed to construe Dr. Magassa's request liberally

FOIA creates a presumption favoring agency disclosure rather than secrecy. Agencies therefore have "a duty to construe a FOIA request liberally." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). This Court does not require that requesters be technically specific, due to the information disadvantage of requesters compared to agencies. *Inst. for Just. v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (explaining "we do not require technical precision in FOIA requests"). The standard instead requires that requesters "reasonably describe" the records sought;

agencies then cannot feign ignorance when they knew or should have known what records to produce. *Id*; 5 U.S.C. § 552(a)(3)(A).

Dr. Magassa's request of October 13, 2017 sought records "about Lassana Magassa," pertaining to five identified subcategories of information. JA-43 – JA-45. The TSA requested more specificity regarding the airports and dates where he was stopped; Dr. Magassa provided the information but simultaneously reiterated his continued request for responsive records addressing all five subcategories in his October 13 request, not just the specific travel dates requested (which address only one subcategory). JA-46 – JA-51.

Nonetheless, the TSA failed to construe Dr. Magassa's request liberally, wrongly limiting its search and tasking only two program offices with the duty to perform searches.[3] JA-25. Because the TSA inappropriately limited its search to a handful of travel dates, the program offices and airports tasked with those searches likely excluded responsive records about Dr. Magassa outside of those dates. The Miller Declaration specifies that agents assigned to conduct searches used Dr.

---

[3] The TSA cites Dr. Magassa's subsequent 2020 FOIA request, specifically requesting records pertaining to his SIDA badge, as justification for its narrower response to this request. ECF No. 14 at 5. Dr. Magassa notes that his 2020 request remains pending with the TSA after two years, with no substantive response or documents provided to date. This barely qualifies as the efficient alternative the TSA represents it to be. Regardless, Dr. Magassa's later FOIA request does nothing to narrow the scope of the request at issue in this matter, nor should the TSA rely on it as a purported amendment to Dr. Magassa's original request.

17

Magassa's name as a search term, but not how or whether those agents otherwise limited their searches. The Declaration also fails to identify whether records containing Dr. Magassa's name fell outside the narrow search parameters the TSA instructed the agents to use, and whether any resulting documents fell within the four other categories Dr. Magassa requested.

The TSA also tasked Intelligence & Analysis ("I&A") with searching for responsive records. This office is responsible for "receiving, assessing, and distributing … vetting information related to transportation security." JA-25. Yet this office failed to produce records about Dr. Magassa's security vetting to become an airline employee. Specifically, I&A tasked only its Watch branch and Secure Flight divisions to search for responsive records. This limited delegation impermissibly narrowed Dr. Magassa's request, leaving his four other requested areas unsearched.[4] The TSA and its units did not construe Dr. Magassa's request liberally as they must, and instead narrowed the searches significantly in a manner that violates the duties FOIA imposes on agencies.

---

[4] *See infra* Part III(B). The TSA only tasked offices dealing heavily with SSI for its searches, effectively orchestrating in advance a means to withhold resulting records from production. That method contradicts the spirit of FOIA and the requirement to search all locations reasonably likely to result in responsive materials.

**B.      The TSA erred in failing to task other program offices with searches**

FOIA requesters cannot know what records exist or how agencies organize their records. *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992). Instead, they rely on agencies to abide by their obligations to search everywhere responsive records may be found. Here, the TSA only tasked two program offices with searching for responsive records: I&A, as explained above, and the Transportation Security Redress Branch ("TSRB"), which houses the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"). JA-27. Because Dr. Magassa worked as an airline employee and interacted with the TSA in that capacity during the relevant timeframes, he reasonably believes more than just these two offices likely have responsive information. The Miller Declaration does not claim the TSA sought records from any program offices maintaining airline employee records. Nor does it explain why purportedly no other program offices possess records responsive to Dr. Magassa's request. And the TSA provides no information describing the results yielded from these program offices searches. *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 403 (D.C. Cir. 2017) (reversing summary judgment for the agency where it provided "no indication of what each … search specifically yielded").

The Miller Declaration <u>does</u> contain the conclusion that the TSA could not search all 430 airports and thirty-nine TSA program offices without unreasonable

effort. JA-23. Yet the Miller Declaration <u>does not</u> describe the nature of any claimed burden, such as whether the burden results from the number of airports or offices involved, and to what extent the necessary searches may cover more than one location or program. JA-21. Merely searching two program offices out of thirty-nine in response to Dr. Magassa's multi-pronged request unacceptably narrows the scope and violates the spirit of FOIA.

## C.    The district court erred in determining that the TSA properly narrowed the request

The district court incorrectly concluded that Dr. Magassa's identification of select airports and dates on October 18, at the request of the TSA and which he specified did not change the scope of his request, somehow narrowed the entire request. After receiving Dr. Magassa's request on October 13 seeking "any and all records … maintained by the TSA about Lassana Magassa" pertaining to five enumerated subcategories, the TSA's FOIA Office instructed Dr. Magassa to provide a list of airports where agents questioned him. JA-46 – JA-48. The TSA justified its request for this information by claiming that searching the records of all 430 airports by definition created an undue burden. JA-24. On October 18, Dr. Magassa's counsel provided a list of five airports and date ranges, reiterating that Dr. Magassa continued to maintain his request for all categories he identified on October 13. JA-24. This exchange shows that Dr. Magassa's identification of select dates and airports occurred only at the TSA's request and did not constitute any

voluntary narrowing or substituting categories by Dr. Magassa. The district court erroneously concluded the TSA need not consider any information beyond the narrow scope which resulted from the TSA's own request, thereby allowing the TSA to dictate its own preferred scope of Dr. Magassa's request. JA-135. The new TSA-created scope excluded much of what Dr. Magassa sought. The resulting overly narrowed searches failed to encompass the other four areas identified in Dr. Magassa's request. The district court erred in holding the TSA completed an adequate search, despite looking only within the significantly reduced framework it selected for itself.

While FOIA requesters have an obligation to submit requests containing details sufficient to allow agencies to search for responsive records, agencies still bear the obligation to construe all requests broadly. The TSA did not complete an adequate search for responsive records because it impermissibly narrowed the scope of Dr. Magassa's request to a degree that precluded locating all responsive records. The TSA also failed to justify its refusal to search other program offices, or explain whether the searches it did run resulted in other records about Dr. Magassa that it did not produce. While the Miller Declaration describes the method TSA agents used to complete their assigned searches, the Declaration does not describe an adequate search as required by FOIA and this Court. *See generally Inst. for Just.*, 941 F.3d at 572 (remanding for the district court to determine the scope of the records system

21

and where requested records may be found); *Aguiar v. DEA*, 865 F.3d 730, 737 (D.C. Cir. 2017) (delineating the necessity for reasonably detailed affidavits that explain the searches run); *Debrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015) (vacating judgment for the agency because the declarations it provided were insufficient to determine whether the agency conducted adequate searches); *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993) (describing the adequacy analysis as a case-specific standard).

## III.      The District Court Erred In Determining The TSA Justifiably Withheld Records Under Exemption 3

Of the records the TSA did locate, it withheld many records in whole or part based on its assertion of FOIA Exemption 3. This Exemption facilitates the withholding of records if another statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes types of matters to be withheld." 5 U.S.C. § 552(b)(3). The statute the TSA relies on for withholding records responsive to Dr. Magassa's request, Section 114(r), authorizes the TSA to deny disclosure of information where disclosure would prove "detrimental to the security of transportation." 49 U.S.C. § 114(r). Relying on the Blair Declaration, the TSA withheld records it determined contained SSI and concluded that releasing this information could allow potential terrorists to circumvent security procedures. JA-74.

22

Courts have repeatedly recognized that Section 114 serves as a proper withholding statute under FOIA Exemption 3. Dr. Magassa does not challenge that. Yet courts must still review the propriety of the withholding. Agencies must describe the withheld material sufficiently enough for courts to determine whether that material fits within the scope of the underlying statute. For Dr. Magassa's request, the TSA fails to describe the withheld material at all.

## A.  Courts may review whether records constitute the types covered by the relevant statute

Exemption 3 is unique because the sole appropriate role of courts, once an agency asserts the Exemption, centers on determining whether the cited statute (1) falls under the coverage of the Exemption, and (2) whether the records fall under the scope of the underlying statute. *Labow*, 831 F.3d at 523 (articulating these two steps courts take in reviewing withholdings under assertions of Exemption 3). Since Dr. Magassa does not challenge that Section 114(r) qualifies as a proper withholding statute, the district court's role then turned to determining whether the TSA sufficiently described how the withheld records fit the scope of Section 114(r). While courts give special deference to agency affidavits, agency declarations must still include details sufficient to allow courts to understand the material thoroughly. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (recognizing that the burden remains on the agency to justify its actions through reasonably detailed affidavits). Supporting declarations must therefore show how withholding the responsive

23

documents furthers the identified statute's purposes. *Id.* (citing *Church of Scientology, Inc. v. Turner*, 662 F.2d 784, 786-7 (D.C. Cir. 1980)) (requiring "the kind of scrupulous, detailed description that enables a District Court judge to perform a searching de novo review"); *see also Shapiro v. U.S. Dep't of Justice*, 507 F. Supp. 3d 283, 309 (D.D.C. 2020) (same).

Courts may defer to the expertise of agency personnel to some degree, but need not and cannot do agencies' jobs for them. Courts do not extrapolate, for example, how the release of the relevant records may create a danger to transportation security. *Compare* JA-141 – JA-142 (connecting between the records and how their disclosure might affect transportation security in ways not articulated by the TSA) *with Turner*, 662 F.2d at 786 n.4 (identifying the page length of the document at issue, the authoring entity and general receiving entity, the number of paragraphs withheld and that the withheld portions contained "information provided in confidence by the intelligence services of two named countries").

Dr. Magassa does not ask this Court to review whether particular records are SSI, and recognizes that to seek that remedy he would need to originate an action in this Court. *See* 49 U.S.C. § 46110(a). Dr. Magassa does, however, ask this Court to require more detailed explanations from the TSA. The TSA bears the burden to describe the records it withholds and articulate why the asserted SSI statute applies to them. Without sufficient detail, courts cannot determine with any certainty

whether the TSA properly withheld these records. The TSA failed to provide any level of detail near the required amount, and the district court erred when it attempted to fill that gap *sua sponte*.

**B.    The TSA fails to sufficiently describe the withheld records**

The TSA provided woefully insufficient information to support its withholdings under its assertion of Section 114(r). The Blair Declaration paints in broad strokes, and concludes the withheld 182 pages reveal "procedures for screening of persons and their property, including selection criteria and any comments, instructions and implementing guidance" whether Dr. Magassa is on a watchlist. JA-74. The TSA provides no information on whether the records in that 182-page block comprise one document or several, nor how disclosure of this information may pose a risk to transportation security. Just as this Court deemed an assertion that "disclosure would jeopardize the agency's national security functions" as "too conclusory," the TSA here fails to make the required "showing of the particularized harm that could be expected to occur from production" of the responsive records. *Turner*, 662 F.2d at 785, *cited by Wolf*, 473 F.3d at 374.[5]

---

[5] The Blair Declaration relies on the definition in 49 C.F.R. pt 1520 to designate any material related to the Secure Flight program as SSI. Exemption 3, however, authorizes withholding based on statute, not regulations. The TSA cannot rely on a non-detailed assertion that the records it withheld all relate to Secure Flight without further specifying how those records fall under the coverage of Section 114(r), and whether nonexempt information may be segregated from within those pages.

The *Vaughn* index provided by the TSA offers no more useful detail than the Declarations, as it vaguely lumps the relevant records into one broad category. The detail necessary to meet the required showing must provide essential information allowing adequate adversarial review, especially where the requester is at an information disadvantage. *King v. U.S. Dep't of Just.*, 830 F.2d 210, 218 (D.C. Cir. 1987) (recognizing that the significance of agency affidavits in FOIA actions "cannot be underestimated"). Though courts may grant agencies some deference, courts do not permit agencies to invoke Exemptions without any meaningful measure of review. *See, e.g., CLEAR v. U.S. Customs & Border Prot.,* No. 19-CV-7079, 2022 U.S. Dist. LEXIS 199846, at *8-9 (E.D.N.Y. Nov. 2, 2022) (quoting *King v. U.S. Dep't of Just.*, 830 F.2d 210, 218-19 (D.C. Cir. 1987)) (describing the primary purpose of a detailed *Vaughn* index as "permit[ting] adequate adversary testing of the agency's claimed right to an Exemption and enabl[ing] [courts] to make a rational decision whether the withheld material must be produced").

The TSA's explanation for withholding twenty-two records in part edges closer to the required burden under Exemption 3 than its complete lack of information explaining the withholding of 182 pages, but the TSA still falls short. The Blair Declaration describes the information contained in these partial redactions as "the type of suggested letter to be issued in response to" Dr. Magassa's "redress inquiry, information related to components that conducted analyses related to" his

DHS TRIP complaint, and "other information that may also be used to determine [Dr. Magassa's] status on a watch list utilized by TSA for pre-board screening (i.e., whether [Dr. Magassa] was or was not on such a list." JA-74. The Declaration does not explain, however, how releasing the withheld material is in any way "detrimental to the security of transportation" other than in a vague sense. *Id.*; *cf.* 49 U.S.C. § 114(r)(C). To properly meet their burdens, agencies must describe each redaction and clearly explain how the claimed Exemption relates to that redaction. *Prison Legal News v. Samuels*, 787 F.3d 1142, 1148 (D.C. Cir. 2015) (citing *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (ruling the submitted declaration insufficient because it provided only general rationale for all categories of documents)). As with the agency in *Prison Legal News*, TSA's *Vaughn* index fails to meet the burden imposed by FOIA and this Court's binding precedent.

Agencies may take a categorical approach to descriptions of withheld material, but only when they submit categories "sufficiently distinct to allow a court to determine, as to each category, whether the specific claimed Exemption(s) are properly applied." *Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir. 1991). The circumstances described by each category must support the agency's purported reasoning for withholding the documents. *Prison Legal News*, 787 F.3d at 1150 (characterizing the agency's justifications as inconsistent with the redacted information). Where the categories could encompass a range of document types,

27

blanket application of Exemptions are inappropriate without more. *Id.* The TSA need not describe the material to a degree that gives away supposed SSI, but the TSA must still provide as much information as possible for the court to conduct a thorough review. By justifying withholdings with only broad strokes and conclusions regurgitating statutory language, the TSA does the courts a disservice. When agencies fail to provide appropriate details, courts may conduct *in camera* review to determine what may be permissible to release. *CLEAR*, 2022 U.S. Dist. LEXIS 199846, at \*15-16 (recognizing the importance of national security concerns, which renders detailed declarations by agency experts all the more valuable to aid courts in making informed decisions). The TSA need not itemize each minute piece of information with identifying descriptions, but categorizing all documents under the same broad and vague headings does not suffice.

## C.    The TSA wrongly issued its *Glomar* response

The TSA inappropriately issued a *Glomar* response to Dr. Magassa's request. In its response, the TSA asserts that "[t]o the extent your request relates to records maintained by TSA, TSA can neither confirm nor deny whether an individual is on a Federal Watch List." JA-56. The Miller Declaration repeats that the TSA's assertion of the *Glomar* response intends to protect counterterrorism intelligence efforts. JA-32.  Yet nothing in the Miller Declaration provides reasons for this conclusory language; instead, the Declaration completes the TSA's circular

argument by incorporating and referencing the Blair Declaration and *Vaughn* index. *Id*. As discussed above, neither hits the mark required.

Agencies may properly assert *Glomar* responses only where confirming or denying the existence of certain records would induce harm fitting under one of FOIA's Exemptions. *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (describing the appropriate circumstance for agencies to submit *Glomar* responses). When agencies use *Glomar* responses to withhold records, they must support that assertion through reasonably specific agency affidavits. Any "across-the-board *Glomar* response is unjustified [where] certain types of responsive documents would fall outside of [the Exemption]." *Id.* at 541.

The TSA's *Glomar* response qualifies as exactly this type of prohibited "across-the-board" assertion. The TSA purports to rely on Exemption 3 and Section 114(r), claiming the responsive records are exempt as SSI. JA-32, JA-75. Housing some records containing SSI does not exclude an entire records system from searches or disclosure of the contents, nor does it exempt the TSA from searching those record systems for responsive records outside of the scope of Exemption 3.[6] The TSA cannot rightfully refuse to run searches for portions of Dr. Magassa's

---

[6] *Darnbourough v. U.S. Dep't of State*, 924 F. Supp. 2d 213, 218 (D.D.C. 2013) (holding that the presence of a record in a database used to make visa decisions does not automatically preclude that record's disclosure under Exemption 3).

request altogether, hiding under the cloak of a vague and unsupported *Glomar* response.

## IV.    The TSA Improperly Withheld Records Under The Guise Of Exemption 6

Exemption 6 to FOIA protects materials from disclosure if "the disclosure … would constitute a <u>clearly unwarranted</u> invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). The TSA cites this Exemption as justification for its redaction of the names of TSA and CBP employees. Since these individuals enforce federal law, CBP argues, releasing their names "<u>could</u> subject them to harassment and retaliation." Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Dkt No. 9-2 at ¶ 28 (emphasis added). But the test for whether agencies may properly withhold information under Exemption 6 does not turn on words like "could" or "might." Courts must determine whether the disclosure at issue would breach a substantial privacy interest rather than a *de minimis* one. *Prison Legal News*, 787 F.3d at 1147 (holding that the identity of the requesting party and that party's intended use of the requested information bears no relevance on the scope of the privacy interest claimed). Agencies retain the burden to demonstrate that public disclosure of responsive documents violates a substantial privacy interest. *Id.* When courts determine this substantial privacy interest exists, they next balance that interest against public interest. *Id.* The district court wrongly concluded here that it could not "identify any public interest in the disclosure" and

30

instead accepted at face value the TSA's conclusion that releasing these names would not usefully shed light on government activities. JA-150. Yet neither the Miller Declaration nor the *Vaughn* index provide sufficient detail to satisfy the TSA's high burden to demonstrate a substantial privacy interest in redacting the agents' names.

## A.    Neither the Miller Declaration nor the *Vaughn* Index suffices

The Miller Declaration attempts to justify the TSA's holdings under Exemption 6 with the argument that revealing agents' names "<u>could</u> result in harassment and/or retaliation[.]" JA-33 (emphasis added). The TSA speculates that disclosing government employees' names <u>may</u> be even more dangerous in today's world, because someone <u>might</u> disseminate them through the internet. The TSA then disregards Dr. Magassa's interest in these records, minimizing it as negligible and insufficient to defeat the agents' privacy interests. JA-33. More conclusions, yet still no reasons.

With its "conclusory, vague, [and] sweeping" statements that releasing the names of TSA and CBP agents may violate a substantial privacy interest, the Miller Declaration fails to sufficiently describe how. *Id.; cf. CLEAR*, 2022 U.S. Dist. LEXIS 199846, at *9. The Supreme Court held that Exemption 6 protects individuals only from "threats to privacy interests more palpable than mere possibilities." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 877-78 (D.C. Cir. 1989)

31

(quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976)) (holding a substantial probability that an invasion of privacy would result from the disclosure must exist). This privacy interest may suffice if the redacted information includes not only individuals' names but also their addresses, birthdates, or other factors enabling the unique identification of individuals from the released data. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982)) (characterizing the Supreme Court's standard as requiring  disclosure of records "which can be identified as applying to that individual"). The Miller Declaration does not explain whether the redacted information consists of anything more than names, or how the contents "may" enable someone with malicious intent to unlawfully identify or locate the named individuals. The Declaration also fails to explain how disclosure of the names at issue "may" lead to harassment of the individuals, beyond merely identifying them as government employees. *Am. Oversight v. U.S. Postal Serv.*, No. 20-2580, 2021 U.S. Dist. LEXIS 182014, at *35 (D.D.C. Sept. 23, 2021) (citing  *Core v. U.S. Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984) (balancing the "slight infringement" of a successful job applicant's privacy against the public's "interest in the competence of people [USPS] employs and in its adherence to regulations governing hiring" to conclude that Exemption 6 did not apply); *Nat'l W. Life Ins. Co. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) ("It cannot be seriously contended that

32

postal employees have an expectation of privacy with respect to their names and duty stations. The names and addresses of the employees of virtually every other federal agency are disclosable, and in fact, many are routinely published and made available through the Government  Printing Office.")); *see also Sai v. TSA*, 315 F. Supp. 3d 218, 262 (D.D.C. 2018) (finding defendant did not meet its burden of showing substantial privacy interest in contact information withheld pursuant to Exemption 6 because defendant "offered little more than conclusory assertions applicable to each redaction, without regard to the position held by the relevant employee, the role played by that employee, the substance of the underlying agency action, or the nature of the agency record at issue"); *Kleinert v. BLM*, 132 F. Supp. 3d 79, 96 (D.D.C. 2015) (finding that defendant did not meet its burden to support use of Exemption 6 to withhold email addresses because "'[t]he disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a de minimis threat depends upon the characteristic(s) revealed . . . and the consequences likely to ensue'") (quoting *Horner*, 879 F.2d at 877, cited by *Dep't of Justice Guide to the Freedom of Information Act*, Exemption 6, p. 19 n.63 (posted August 19, 2022) (recognizing that "[i]t is generally well-accepted that federal employees do not have a reasonable expectation of privacy in their titles").

The TSA's paltry *Vaughn* index adds no further detail on the privacy interests potentially implicated. Instead, it broadly describes three pages withheld in part from the DHS TRIP file as including the names of government employees. JA-62. This lack of detail provides no explanation for how the records may implicate a substantial privacy interest. The *Vaughn* index contains even fewer details about the context in which the names appear. Without these necessary explanations and levels of detail, courts cannot determine whether the withheld documents contain sufficiently identifying information sufficient to justify the TSA's redactions.

## B.    The district court ignored the strong public interest

Despite the TSA's assertion and the district court's holding disregarding public interest in the withheld materials, Dr. Magassa articulates a public interest sufficient to rebut the *de minimis* privacy interest claimed by the TSA. The public has great interest in information and illumination on government agencies' methods to do their jobs. *Jurewicz v. USDA*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) ; *see also Am. Oversight*, 2021 U.S. Dist. LEXIS 182014, at *34 ("'The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'") (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth*., 510 U.S. 487, 497 (1994)). Dr. Magassa pursues a separate litigation matter identified in this case, which alleges a

federal agency wrongly flagged him as a danger to national security, violated his rights to due process and committed other harms. *See generally Magassa v. Wolf*, Case No. 2:19-cv-02036 (W.D. Wash. filed Dec. 16, 2019), at Dkt. 39, "Amended Complaint;" *see also* JA-78 (currently pending on appeal before the Ninth Circuit). The names of agents involved in processing Dr. Magassa's DHS TRIP Complaint and the CBP agents whose names appear in the withheld documents more than likely shine light on how the Redress procedures operate, and who participates in determining their outcome. This transparency serves a vital importance for the public interest in knowing the federal government acts with integrity in its national security procedures, and does not merely target individuals based on protected classes. Release of the relevant names without more identifying criteria does not violate recognized privacy interests; instead, that release contributes to the public interest of transparency in governing.

## V.    The District Court Erred In Determining The TSA Met Its Segregability Obligation

Even when agencies properly withhold information under a FOIA Exemption, those agencies must still disclose "all reasonably segregable nonexempt portions of the requested record(s)." *Roth v. U.S. DOJ*, 642 F.3d 1161, 1167 (D.C. Cir. 2011). Agencies must disclose these nonexempt portions unless they sufficiently show the information is "inextricably intertwined with exempt portions." *Wilderness Soc'y v. United States DOI*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004). Agencies enjoy only

limited court deference in determining for themselves whether they meet their segregability obligations. Courts require agencies to provide detailed explanations of all withheld records. Agencies must detail the extent to which any exempt information intertwines with possible nonexempt information, and if so why disclosure of nonexempt information cannot occur without disclosure of the exempt information.

To meet their burdens, agencies must provide sufficiently detailed *Vaughn* index. *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). Agencies may support that index with declarations describing the records and the interaction between exempt and nonexempt information. Here, the TSA attaches a *Vaughn* index to the Miller Declaration, which is bare bones at best and provides none of the necessary detail allowing courts to determine whether the nonexempt information inextricably intertwines with exempt material. JA-62. The Miller and Blair Declarations do nothing to make up for the *Vaughn* index's deficiencies on this topic, either. Instead, both declarants not surprisingly conclude they made the appropriate segregability considerations. JA-35; JA-73. Yet the district court erroneously held that to be enough. The district court erred in shifting the burden to Dr. Magassa to provide a sufficient "quantum of evidence." JA-151; *but see Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (describing the amount of evidence plaintiffs must show as unclear, and noting a more accurate standard would be to require the

requester produce evidence supporting "belief by a reasonable person" whether the agencies acted properly). The TSA did not provide sufficient evidence to satisfy its burden on its claim of its nonexempt information, and whether any exists within the relevant documents.

## A.     The *Vaughn* index and the Miller and Blair Declarations lack sufficient detail

To fulfill their obligations of examining potential segregability of information, agencies must provide *Vaughn* indexes containing "reasonably specific description" of the information withheld. *CLEAR*, 2022 U.S. Dist. LEXIS 199846, at *15. Faced with FOIA's presumption favoring disclosure, agencies continue to bear the burden of demonstrating they properly withheld records. Courts need not speculate why agencies withhold any records. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 928 F. Supp. 2d 139, 144 (D.D.C. 2013) (requiring, even where the requester moves for summary judgment, the agency to satisfy its burden of proving the relevant records are exempt from disclosure). Courts ideally do not need to apply their resources to review records, like the 182 pages here, to determine for the agency whether any portions are nonexempt. *Vaughn*, 484 F.2d at 826 (labeling court review as "not what Congress had in mind"). To ease courts' review and meet agencies' burdens to prove compliance with their segregability obligations, agencies may provide proper *Vaughn* indexes "subdivid[ing] the document under consideration

37

into manageable parts … [and] narrowing the scope of the court's inquiry." *Id.* at 827.

The TSA's *Vaughn* index in this matter contains insufficient detail to provide any aid to courts or Dr. Magassa. As described above, the third item on the index lumps all 182 responsive pages withheld in full together into one section. The vague description provided for these records separates them into only very broad categories. These categories purportedly include "procedures … including selection criteria … and implementing guidance pertaining thereto, and information that <u>may</u> be used to determine Plaintiff's status on a watchlist." JA-62 (emphasis added). That description fails to adequately explain whether these 182 pages comprise one document or several, and whether portions of these pages may not be exempt from disclosure. Other agencies have met their burdens in the past, even in cases with national security considerations; the TSA deserves no different standard. *Cf. Turner*, 662 F.2d at 786 n.4.

The Declarations provided by Miller and Blair do not bolster the *Vaughn* index. Both Declarations offer nothing more than conclusory assurances the TSA completed the required segregability analysis. The Miller Declaration provides one paragraph, relying primarily on the assertions made by the Blair Declaration and describing the Declarant's review of three pages of responsive records containing names withheld pursuant to Exemption 6. JA-35. The Miller Declaration does not

address the 182 pages withheld in full nor whether exempt material appears among the pages. The Blair Declaration never even uses the word "segregability." Instead, it briefly touches on the Declarant's own review of the records and asserts the conclusion that all records withheld include information that constitutes SSI. The Blair Declaration next concludes that the agency only redacted the smallest amount of information possible to protect SSI. JA-73. The Blair Declaration does not describe whether or how intertwined the exempt information may be with nonexempt information and does not speak to how release of the nonexempt information may jeopardize SSI.

## B.     The TSA fails to provide a sufficient segregability analysis

A finding of segregability is so crucial to the legitimacy of FOIA litigation that courts must make that determination before approving agencies' use of FOIA Exemptions. *Sussman*, 494 F.3d at 1106. Despite the complete absence of this information, the district court erroneously determined the TSA met its segregability obligations. Dr. Magassa has no way of independently knowing whether information included in the 182 pages withheld in full may be segregated from exempt SSI materials. Nowhere does the TSA explain what portions of the 182 pages may be nonexempt, nor how the nonexempt material interacts with the exempt materials. *See generally Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ,* 746 F.3d 1082, 1099 (D.C. Cir. 2014) (refusing to determine whether records were exempt

from disclosure without more information about the degree of overlap with nonexempt information); *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (finding that district courts have an affirmative duty to consider segregability *sua sponte*); *Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998) (characterizing as "egregious" the government's withholding of a thirty-seven page document without disclosing which portions were nonexempt).

## VI.    In the Alternative, Appellant Requests This Court Order Review of the Withheld Records *In Camera*

Where dispute exists over whether agencies properly withheld records, judges can and should examine these records *in camera* to make their determination. Congress specifically provided for this process in FOIA itself. *See* 5 U.S.C. § 552(a)(4)(B) ("[T]he court … may examine the contents of such agency records in camera to determine whether such records … shall be withheld[.]"). *In camera* review becomes "particularly appropriate" where agencies fail to provide sufficiently detailed affidavits. *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). *In camera* review supports the fact-specific nature of FOIA cases. In fact, the TSA offered the district court the opportunity for further *ex parte, in camera* information about the records at issue, though the district court declined. Defendant's Combined [1] Reply in Further Support of its Motion for Summary Judgment and [2]

Opposition to Plaintiff's Cross-Motion for Summary Judgment, Dkt No. 14 at 8 n.3.[7]

Dr. Magassa therefore respectfully requests this Court remand this case to the district court with instructions that the district court conduct *in camera* review of the withheld records, and determines if and to what extent the withheld records include segregable material.

## CONCLUSION

FOIA imposes obligations on agencies strongly favoring disclosure. The TSA failed to meet its obligations in response to Dr. Magassa's request. The district court wrongly determined otherwise despite little evidence or explanation from the TSA. The district court therefore ruled contrary to applicable precedent and did not require the TSA to meet its clearly established burdens under the law. Dr. Magassa respectfully requests this Court reverse the district court's grant of summary judgment, remand this matter, and require the TSA to either produce any records to which Dr. Magassa is entitled under the law, or more fully explain the reasons for its withholdings.

---

[7] The TSA did not actually offer to let the district court review the documents themselves, instead offering only a remedy of a more detailed explanation.

41

Dated this 27th day of June, 2023.

Respectfully submitted,

*/s/ Christina A. Jump*
Christina A. Jump
D.C. Cir. Bar No. 62175
cjump@clcma.org
Samira Elhosary
D.C. Cir. Bar No. 63673
selhosary@clcma.org
100 N. Central Expy, Ste. 1010
Richardson, TX 75080
(972) 914-2507
*Attorneys for the Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and D.C. Cir. Ru. 32(a)(1), the undersigned hereby certifies that this brief complies with the type- volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 9,404 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Respectfully Submitted,

*/s/ Christina A. Jump*
Christina A. Jump
Attorney for the Appellant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

served by CM/ECF delivery on June 27, 2023 on all counsel or parties of record

on the service list.

Respectfully Submitted,

*/s/ Christina A. Jump*
Christina A. Jump
Attorney for the Appellant